UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL STEVENS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LOXO ONCOLOGY, INC., JOSHUA H. BILENKER, STEVE ELMS, KEITH T. FLAHERTY, AVI Z. NAIDER, LORI A. KUNKEL, ALAN FUHRMAN, TIM MAYLEBEN, and STEVE D. HARR,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY DEMAND** |

Plaintiff Michael Stevens ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit for violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934. In support of this Class Action Complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action on behalf of himself and the public stockholders of Loxo Oncology, Inc. ("Loxo" or the "Company") against the Company and Loxo's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Sections 14(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), §§78n(e) and 78t(a) respectively, and U.S. Securities and Exchange Commission (the "SEC") Rule 14d-9 (17 C.F.R. § 240.14d-9) and SEC Regulation G, 17 C.F.R. 244.100 in connection with the proposed acquisition of Loxo by Eli Lilly and Company ("Lilly").

2. On January 5, 2019, the Company announced that it had entered into an agreement and plan of merger (the "Merger Agreement") with Lilly, by which Lilly (through a wholly-owned subsidiary) will acquire all of the outstanding shares of Loxo common stock through an all-cash tender offer at a purchase price of $235 per share (the "Proposed Transaction"). The January 5 Press Release disclosed that the Proposed Transaction would be accomplished through a tender offer rather than a shareholder vote ("Tender Offer").

3. The Tender Offer commenced on January 17, 2019 when the Company filed a Recommendation Statement on Schedule 14D-9 (the "14D-9") with the SEC, recommending that the Company's stockholders tender their shares for the Tender Offer price. The Tender Offer is set to expire on February 14, 2019.

4. Plaintiff alleges that the 14D-9 is materially false and/or misleading because, *inter alia*, it fails to disclose certain material projected internal financial information about the Company, relied on by the Individual Defendants to recommend the Tender Offer and by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") to render an opinion that the Tender Offer is fair to Loxo stockholders, and certain material information regarding the sale process leading up to the Tender Offer, which omissions render the 14D-9 incomplete and/or misleading.

5. In particular, the 14D-9 omits material information regarding: (i) certain of the Company's financial projections and/or explanation of the manner in which the projections were calculated, which appear to differ from Loxo's financial metrics reported to shareholders in prior SEC filings; (ii) the valuation analyses performed by Goldman Sachs in support of its fairness opinion; and (iii) certain information regarding the background of the transaction. These omissions render the 14D-9 materially misleading, including the basis for the Board's recommendation that

shareholders tender their shares and the non-GAAP financial disclosures that were relied on and utilized by the Board and Goldman Sachs to recommend the Proposed Transaction.

6. The failure to adequately disclose such material information constitutes a violation of §§ 14(e) and 20(a) of the Exchange Act, among other reasons, because Loxo stockholders are entitled to such information in order to make a fully-informed decision regarding whether to tender their shares in connection with the Tender Offer.

7. For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Tender Offer or, in the event the Tender Offer is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under §§ 14(e) and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

9. The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because a substantial portion of the events or omissions occurred in this District.

## PARTIES

11. Plaintiff is, and has been at all relevant times, the owner of shares of Loxo common stock.

12. Defendant Loxo is a Delaware corporation with its principal executive offices located at 281 Tresser Blvd., 9th Floor, Stamford Connecticut 06901. Loxo's common stock trades on the NASDAQ under the ticker symbol "LOXO".

13. Individual Defendant Joshua H. Bilenker has served as a President, Chief Executive Officer, and director of the Company since June 2013. Bilenker is the Operating Partner at Aisling, where he has worked in various capacities since 2008

14. Individual Defendant Steve Elms has served as a director of the Company since July 2013 is the current Chairman of the Board. Mr. Elms also is a Managing Partner at Aisling.

15. Individual Defendant Keith T. Flaherty, M.D has served as a director of the Company since September 2013.

16. Individual Defendant Alan Fuhrman has served as a director of the Company since January 2015.

17. Individual Defendant Steve D. Harr, M.D. has served as a director of the Company since October 2014.

18. Individual Defendant Lori A. Kunkel, M.D. has served as a director of the Company since 2012.

19. Individual Defendant Tim Mayleben has served as a director of the Company since July 2015.

20. Avi Z. Naider ("Naider") has served as a member of the Board since September 2013.

21. The Individual Defendants referred to above are collectively referred to herein as the "Individual Defendants" and/or the "Board." The Individual Defendants and Loxo may also collectively be referred to as "Defendants."

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action individually and as a class action on behalf of all holders of Loxo stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendants.

23. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

24. The Class is so numerous that joinder of all members is impracticable. As of January 4, 2019, there were 30,754,634 shares of common stock issued and outstanding. On information and belief, these shares are held by thousands of beneficial holders who are geographically dispersed across the country.

25. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

    a. whether Defendants have violated Sections 14 and 20 of the Exchange Act, and SEC regulations promulgated thereunder, in connection with the Tender Offer; and

   b.  whether Plaintiff and the other members of the Class would be irreparably harmed and/or otherwise damaged were the transaction complained of herein consummated.

26. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

27. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

29. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

30. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

31. Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will suffer absent judicial intervention and, in the absence of injunctive relief, seeks to pursue a claim for damages.

# SUBSTANTIVE ALLEGATIONS

**I.   Background and the Tender Offer**

32. Loxo is a biopharmaceutical company focused on developing highly selective medicines for patients with genomically defined cancers. The Company's pipeline focuses on cancers that are uniquely dependent on single gene abnormalities, such that a single drug has the potential to treat the cancer with dramatic effect.

33. On January 7, 2019, Loxo and Lilly issued a joint press release announcing the Proposed Transaction, which stated the following, in relevant part:

> (NEWSWIRE) -- Eli Lilly and Company (NYSE: LLY) and Loxo Oncology, Inc. (NASDAQ: LOXO) today announced a definitive agreement for Lilly to acquire Loxo Oncology for $235.00 per share in cash, or approximately $8.0 billion. Loxo Oncology is a biopharmaceutical company focused on the development and commercialization of highly selective medicines for patients with genomically defined cancers.
>
> The acquisition would be the largest and latest in a series of transactions Lilly has conducted to broaden its cancer treatment efforts with externally sourced opportunities for first-in-class and best-in-class therapies. Loxo Oncology is developing a pipeline of targeted medicines focused on cancers that are uniquely dependent on single gene abnormalities that can be detected by genomic testing. For patients with cancers that harbor these genomic alterations, a targeted medicine could have the potential to treat the cancer with dramatic effect.
>
> Loxo Oncology has a promising portfolio of approved and investigational medicines, including: "At Lilly Oncology, we are dedicated to developing cancer medicines that will make a meaningful difference for patients," said Sue Mahony, Ph.D., Lilly senior vice president and president of Lilly Oncology.
>
> - LOXO-292, a first-in-class oral RET inhibitor that has been granted Breakthrough Therapy designation by the FDA for three indications, with an initial potential launch in 2020. LOXO-292 targets cancers with alterations to the rearranged during transfection (RET) kinase. RET fusions and mutations occur across multiple tumor types, including certain lung and thyroid cancers as well as a subset of other cancers.
>
> - LOXO-305, an oral BTK inhibitor currently in Phase 1/2. LOXO305 targets cancers with alterations to the Bruton's tyrosine kinase (BTK), and is designed to address acquired resistance to currently available BTK inhibitors. BTK is a validated molecular target found across numerous B-cell leukemias and lymphomas. Vitrakvi, a first-in-class oral TRK inhibitor developed and

- commercialized in collaboration with Bayer that was recently approved by the U.S. Food and Drug Administration (FDA).

- Vitrakvi is the first treatment that targets a specific genetic abnormality to receive a tumor-agnostic indication at the time of initial FDA approval. LOXO-195, a follow-on TRK inhibitor also being studied by Loxo Oncology and Bayer for acquired resistance to TRK inhibition, with a potential launch in 2022.

\* \* \*

Under the terms of the agreement, Lilly will commence a tender offer to acquire all outstanding shares of Loxo Oncology for a purchase price of $235.00 per share in cash, or approximately $8.0 billion. The transaction is not subject to any financing condition and is expected to close by the end of the first quarter of 2019, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of Loxo Oncology's common stock. Following the successful closing of the tender offer, Lilly will acquire any shares of Loxo Oncology that are not tendered into the tender offer through a second-step merger at the tender offer price.

The tender offer represents a premium of approximately 68 percent to Loxo Oncology's closing stock price on January 4, 2019, the last trading day before the announcement of the transaction. Loxo Oncology's board recommends that Loxo Oncology's shareholders tender their shares in the tender offer. Additionally, a Loxo Oncology shareholder, beneficially owning approximately 6.6 percent of Loxo Oncology's outstanding common stock, has agreed to tender its shares in the tender offer.

\* \* \*

34.   Loxo appears well-positioned for growth and the Merger Consideration appears inadequate in view of developments prior to the announced Merger Agreement. Loxo stock was trading as high as $189.96 in the months leading to the Proposed Transaction which undercuts the claimed premium touted by Defendants. Moreover, on October 15, 2018, it was reported that the FDA granted Breakthrough Therapy Designation to the Company's lead drug, LOXO-292, a selective RET inhibitor, for the treatment of patients with advanced RET fusion-positive thyroid cancer, supplementing two previous Designations granted just a month prior. Investment bank Raymond James projected nearly $500 million in annual revenue for the drug by 2023. Although Loxo claims that Loxo-292 is its "most valuable asset" (14D-9 21), it is unclear from the Unaudited

Prospective Financial Information of Loxo Oncology (*id.* at 35-36), if this projection is included in the 14D-9 for shareholders to consider or if the Board even considered this.

35. Moreover, Loxo also has LOXO-305, an oral BTK inhibitor currently in Phase I/II, being evaluated in several B-cell leukemias and lymphomas. It also has LOXO-195, a follow-on TRK inhibitor being studied by Loxo and Bayer. On November 8, 2018, Loxo reiterated the Company's significant progress with its pipeline in its announcement of Third Quarter 2018 results.

36. Thus, it appears that Loxo is well-positioned for financial growth, and that the Tender Offer fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the 14D-9, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Tender Offer for themselves and make an informed decision concerning whether to tender their shares.

**II.    The 14D-9 Omits Material Information**

37. On January 17, 2019, Loxo filed the 14D-9 with the SEC in support of the Tender Offer. As alleged below and elsewhere herein, the 14D-9 contains material misrepresentations and omissions of fact that must be cured to allow Loxo's stockholders to make an informed decision with respect to the Tender Offer. Specifically, the 14D-9 omits material information regarding: (i) certain of the Company's financial projections; (ii) the valuation analyses performed by the Company's financial advisor in support of their respective fairness opinions; and (iii) the sale process leading up to the Tender Offer.

*The Company's Financial Forecasts*

38. The 14D-9 discloses certain financial projections on page 36, which were developed by the Company's senior management, relied upon the Board in recommending the

Tender Offer, and utilized by Goldman Sachs in rendering its fairness opinions. 14D-9 36. The 14D-9 also discloses:

> In addition, certain of the projected financial information set forth above, such as Unlevered Free Cash Flow, are non-GAAP financial measures. **Non-GAAP financial measures should not be considered as an alternative to operating income or net income as measures of operating performance, or as an alternative to cash flows as a measure of liquidity.** Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by Loxo Oncology may not be comparable to similarly titled amounts used by other companies. No reconciliation of non-GAAP measures in the information set forth above to GAAP measures was created or used in connection with the Transactions.

*Id.* at 37 (emphasis added).

39. The reported projected financial metrics include Total Net Revenue, Gross Profit (incl. royalties & milestones), and Operating Income. *Id.* at 36. However, Loxo does not appear to report these same metrics in its quarterly and annual SEC earning reports, reporting instead: (i) aggregate cash, cash equivalents and investments; (ii) revenue from collaboration agreements; (iii) research and development expenses; and (iv) General and administrative expenses. The 14D-9 reports Net Income and Loxo does report Net Loss in its earnings release, but also reports non-GAAP net loss, which in its November 2018 release for the Third Quarter 2018 excluded recognition of collaboration revenue related to the Bayer upfront payment and share-based compensation expenses.[1] The recommendation of the Proposed Transaction based on new unexplained financial metrics and/or financial metrics that do not appear to correspond to traditional financial metrics reported to shareholders is misleading in violation of SEC rules and regulation.

---

[1]   https://ir.loxooncology.com/press-releases/2376151-Loxo-oncology-reports-third-quarter-2018-financial-results.

40. Thus, Loxo appears to be recommending the Proposed Transaction based in part on projected financial metrics that are not previously reported to shareholders. The Company must amend the 14D-9 to explain these metrics and/or reconcile with the financial metrics that are reported to shareholders on a regular basis before expiration of the Tender Offer.

41. Moreover, the 14D-9 reported projected Unlevered Free Cash Flow ("UFCF") and appears to have reconciled this non-GAAP measure with projected Net Income. 14D-9 36. However, glaringly absent from the calculation of UFCF and the Company's other projected financial metrics is an accounting for stock-based compensation expenses, which the Company treats in accordance with the provisions of ASC Topic 718, *Compensation-Stock Compensation* ("ASC 718"), which requires the recognition of expense related to the fair value of stock-based compensation awards in the Statement of Operations.

42. Stock-based compensation ("SBC") appears to be a significant expense. As reported in the Company's third quarter 2018 report, "As of December 31, 2017, there was $40.4 million of total unrecognized compensation expense related to options granted but not yet vested of which $3.8 million is attributable to non-employee awards and subject to re-measurement until vested. The total unrecognized compensation expense of $40.4 million will be recognized as expense over a weighted-average period of 2.8 years."[2] The 14D-9 does not appear to report any information on SBC or the impact this expense had or did not have on the projected financials and/or UFCF. This information must be disclosed to shareholders before expiration of the Tender Offer.

---

[2] www.sec.gov/Archives/edgar/data/1581720/000110465918014107/a18-1042_110k.htm#ITEM8_FINANCIALSTATEMENTSANDSUPP_073358.

43. Clearly, shareholders would find the aforementioned information material since the Board's unanimous recommendation that shareholders tender their shares in connection with the Tender Offer was based in part on its review of this information. 14D-9 35-36.

*The Financial Advisor's Valuation Analyses and Fairness Opinion*

44. The financial projections at issue were relied upon by the Company's financial advisor, Goldman Sachs, in connection with its valuation analyses and fairness opinion. *Id.* at 29-35. The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently. Once a registration statement discloses internal projections relied upon by the Board, those projections must be complete and accurate.

45. With respect to Goldman Sachs' Illustrative Discounted Cash Flow Analysis ("DCF"), the 14D-9 contains projections from 2019 through 2033, but the Illustrative Discounted Cash Flow Analysis is limited to projections through to 2028. *Id.* at 32-33. Goldman Sachs' prepared a DCF analysis that calculated present value of UFCF from 2019 through 2028. However, Goldman Sachs and the Company prepared projections, including UFCF through 2033. The failure by Goldman Sachs' to calculate a complete DCF through 2033 misleads stockholders of the true value for their shares. The 14D-9 also fails to disclose the following inputs for the DCF Analysis: (i) the individual inputs and assumptions underlying the selection of the discount rate range of 10.0%-11.0% and the range of perpetuity growth rates of 3.5% to 4.5%; (ii) the UFCF and corresponding line items for each of the product candidates of Loxo, including revenue, cost of goods sold, operating expenses, stock-based compensation expenses, and estimated net operating losses ("NOL"); and (iii) the terminal values for the Company. *Id.* at 32. The 14D-9 must disclose the complete DCF through 2033, or the reasons why the DCF was not performed beyond 2028, and the inputs identified above.

46. With respect to Goldman Sachs's Illustrative Sum-of-the-Parts-Discounted Cash Flow Analysis, the 14D-9 fails to disclose the following key components used in the analysis: (i) the individual inputs and assumptions underlying the selection of the discount rate range of 10.0%-11.0%, including the Company's target capital structure weightings, the cost of long-term debt, future applicable marginal cash tax rate and a beta for the Company, as well as certain financial metrics for the United States financial markets generally; (ii) the UFCF and corresponding line items for each of the product candidates of Loxo, including revenue, cost of goods sold, operating expenses, stock based compensation expenses, and estimated NOLs; and (iii) the implied per share value range calculated for each product candidate. *Id.* at 31-32.

47. These key inputs are material to Loxo shareholders, and their omission renders the summary of Goldman Sachs' DCF valuations analyses incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

### *The Sale Process*

48. The 14D-9 fails to disclose material information regarding Goldman Sachs' potential conflicts of interest, including whether Goldman Sachs performed past services for the

Company or its affiliates, as well as the timing and nature of such services and the amount of compensation Goldman Sachs received for such services. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

49. The 14D-9 also fails to disclose material information regarding the timing and substance of negotiations regarding the "Bilenker Offer Letter" (14D-9 6, 10) and whether Dr. Bilenker had employment discussions with Eli Lilly prior to the agreement on the Merger Consideration. This information is material to Plaintiff and Loxo's other public stockholders because it relates directly to defendant Bilenker's interest in the outcome of the Proposed Transaction and whether such interest compromised defendant Bilenker's ability to objectively consider the fairness of the Proposed Transaction to Plaintiff and Loxo's other public stockholders.

50. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Loxo's stockholders. Accordingly, based on the foregoing disclosure deficiencies in the 14D-9, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Loxo stockholders will suffer, absent judicial intervention, if Loxo's stockholders are required to decide whether or not to tender their shares without the above-referenced material misstatements and omissions being remedied.

## CLAIMS FOR RELIEF

### COUNT I
### Claims Against All Defendants for Violations of § 14(e) of the Securities Exchange Act of 1934

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order

to make the statements made, in the light of the circumstances under which they are made, not misleading . . ."  15 U.S.C. § 78n(e).

53.  As discussed above, Loxo filed and delivered the 14D-9 to its stockholders, which Defendants knew contained, or recklessly disregarded, material omissions and misstatements described herein.

54.  Defendants violated §14(e) of the Exchange Act by issuing the 14D-9 in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer.  Defendants knew or recklessly disregarded that the 14D-9 failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55.  The 14D-9 was prepared, reviewed and/or disseminated by Defendants.  It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

56.  In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act.  By virtue of their positions within the Company and/or roles in the process and in the preparation of the 14D-9, Defendants were aware of this information and their obligation to disclose this information in the 14D-9.

57.  The omissions and misleading statements in the 14D-9 are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares

or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the 14D-9 as altering the "total mix" of information made available to stockholders.

58. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the 14D-9, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the 14D-9, rendering certain portions of the 14D-9 materially incomplete and therefore misleading.

59. The misrepresentations and omissions in the 14D-9 are material to Plaintiff, and Plaintiff and Loxo stockholders will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II
### Against the Individual Defendants for Violations of § 20(a) of the 1934 Act

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. The Individual Defendants acted as controlling persons of Loxo within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Loxo and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the 14D-9, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

62.     Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

63.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same.  The 14D-9 contains the unanimous recommendation of the Individual Defendants to approve the Tender Offer.  They were thus directly involved in the making of the 14D-9.

64.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.   Enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or consummating the Tender Offer, unless and until the Company discloses the material information discussed above, which has been omitted from the 14D-9;

C.   In the event Defendants consummate the Tender Offer, awarding damages to Plaintiff and the Class;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 31, 2019

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**

Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Michael Van Gorder*
Michael Van Gorder (#6214)
3828 Kennett Pike, Suite 201
Wilmington, DE 19807
Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*